<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| IRYNA KOZAK,<br><br>         Plaintiff,<br><br>         v.<br><br>INTERTEK   USA   INC.   and   JOHN   F.<br>STACHOWIAK,<br><br>         Defendants. | No. 23cv2079 (EP) (JRA)<br><br>**OPINION** |

**PADIN, District Judge.**

Plaintiff Iryna Kozak brings common law claims against Defendants Intertek USA Inc. ("Intertek") and John F. Stachowiak.  D.E. 1 ("Complaint" or "Compl.").  Stachowiak has not appeared in this action.  *See* D.Es. 23, 43.  Pursuant to Federal Rule of Civil Procedure 56(a)(2)(B), Intertek moves for summary judgment on all counts against it.  D.E. 64-1 ("Motion" or "MSJ").[1] Kozak opposes.  D.E. 65 ("Opposition" or "Opp'n").  Intertek replies.  D.E. 66 ("Reply").

The Court decides the matter without oral argument.  *See* Fed. R. Civ. P. 78; L. Civ. R. 78.1(b).  For the reasons explained below, the Court will **GRANT** the Motion and **DISMISS** Intertek from this action.

---

[1] For ease of reference, the Court refers to Intertek's memorandum of law filed in support of its Motion at D.E. 64-1.  Intertek filed its notice of motion at D.E. 64.

## I.    BACKGROUND[2]

### A.    Factual Background

Kozak, who has experience in the oil industry, met Stachowiak in 2007 when they both worked at Intertek.  CSUMF ¶¶ 1, 4.  Over the years, she, Stachowiak, and Preston Smith (who was later Stachowiak's supervisor at Intertek) worked at different companies within the oil industry, such as Intertek, Inspectorate, and Societe Generale de Surveillance ("SGS").  *Id.* ¶ 3.

Kozak, Smith and Stachowiak previously worked together at SGS at some point between 2007 and 2022.  SUMF Response ¶¶ 25–26; D.E. 65-1 ("Kozak Decl.") ¶¶ 4, 56–58.  During this period, Kozak, Smith, and Stachowiak attended an industry event called "Massachusetts Appreciation Day."  SUMF Response ¶ 25; Kozak Decl. ¶¶ 4, 56–58.; CSUMF ¶ 43.  Kozak attests that at this event, Stachowiak was accused of sexually assaulting a female employee of another inspection company.  CSUMF ¶ 43.  Kozak states that Smith terminated Stachowiak "on the spot for this highly inappropriate and unlawful conduct."  *Id.* ¶ 44.  However, when Kozak was asked whether she knew if Stachowiak had previously done anything "that she thought was inappropriate" to anyone during their time at SGS, she also said "no."  SUMF Response ¶¶ 32–34 (citing D.E. 64-6 ("Kozak Dep.") at 12:1–5); CSUMF ¶¶ 47–48.  Smith denies having terminated Stachowiak while at SGS.  SUMF ¶ 26 (citing D.E. 64-8–9 ("Smith Dep.") at 49:11–50:15).  Smith denies any knowledge regarding any allegations of sexual misconduct while he worked with

---

[2] The facts are drawn from Intertek's Statement of Undisputed Material Facts, D.E. 64-2 ("SUMF"), Kozak's Counterstatement of Material Facts, D.E. 65-5 at 30–39 ("Counterstatement" or "CSUMF"), Kozak's responses to Intertek's Statement of Undisputed Material Facts D.E. 65-5 at 1–30 ("SUMF Response"), and the exhibits referenced therein.  The facts are undisputed unless noted otherwise.  The above scope of responsibilities are therefore the only ones properly before this Court.  *See infra* Section III.B.

Stachowiak at SGS.  *Id.* (citing Smith Dep. at 49:11–50:15).  Stachowiak and Kozak remained friends over the years.  CSUMF ¶¶ 4, 21.

Stachowiak then began working for Intertek in February 2022 as an Operations Coordinator.[3]  SUMF ¶¶ 4, 9.  Smith was one of Stachowiak's supervisors.  *See* SUMF Response ¶ 3.  Before hiring Stachowiak, Intertek's human resources department conducted a formal employment and criminal background check.  SUMF ¶ 5.  The checks revealed no criminal history.  *Id.*  Before Stachowiak began working at Intertek, he agreed to and signed Intertek's Code of Ethics Agreement.  *Id.* ¶ 6.  Intertek's Code of Ethics Agreement is available online and it prohibits "[i]nappropriate sexual advances and unwelcome physical contact."  *Id.* ¶ 7 (citing Intertek, Our Code of Ethics, https://cdn.intertek.com/mail/images/hr/_files/codeOfEthics.pdf ("Intertek's Code of Ethics")); Intertek's Code of Ethics at 4.

Stachowiak's role as Operations Coordinator included responsibilities related to writing job instructions for inspection and lab teams, reviewing nominations from clients for requested services, providing updates on operations, updating management, invoicing service jobs, and building relationships with clients.  SUMF ¶ 9.[4]  Between February 12, 2022 and February 14, 2022, Stachowiak told Kozak via Facebook messenger that Intertek's staff had been depleted and

---

[3] The parties dispute the exact date that Stachowiak began working for Intertek in February, 2022. SUMF Response ¶ 4.  For purposes of this Opinion, the exact date in February is not material.

[4] Citing nothing (in violation of Local Civil Rule 56.1), Kozak contends that—on several occasions—she requested a copy of the formal job description for Operations Coordinator from Intertek and failed to receive one.  SUMF Response ¶ 9 n.1.  Because she cites nothing to dispute the scope of an Operations Coordinator's responsibilities, and there is nothing apparent in the record to support her dispute, the Court cannot consider Kozak's response a validly made one. Even *pro se* litigants are not exempt from the procedural requirement that parties must dispute another party's assertion of fact with *cited facts*.  *Jones v. Sec'y Pennsylvania Dep't of Corr.*, 589 F. App'x 591, 593 (3d Cir. 2014).

"[f]rom what little [he] know[s], it sounds like [he will] be starting from scratch."  D.E. 64-7 ("Facebook Messages") at 4.

Kozak asked Stachowiak, whom she referred to as "bubble head," to "keep your girl in mind for office work please."  D.E. 64-7 ("Facebook Messages") at 3.  Kozak told Stachowiak, "I need a job bubble head back in the oil industry."  *Id.*  Stachowiak told Kozak that he needed her "marketing skills and contacts."  *Id.* at 4.

On February 17, 2022, Stachowiak told Kozak that things were still hectic given his new hire status.  *Id.* at 5.  He, however, asked her to visit and have lunch.  *Id.*  Kozak responded by stating, "Monday or Wednesday.  Pick a day my majesty."  *Id.* at 7.  Stachowiak responded by stating, "So Weds it is my Queen !!! Hahahahaha."  *Id.*  The two, however, rescheduled because Stachowiak had a client lunch to attend.  *Id.* at 8.  In response to the news, Kozak complained "I see other people [are] more important than me. Grrr."  *Id.*  Stachowiak responded by saying "[n]ever" and that Kozak, and only Kozak, ruled his world.  *Id.* at 9.  The two rescheduled for Thursday.  At that point, Kozak reiterated her interest in a job by stating "I need office job.  Operations or marketing.  Or something.  Talk to Mr Smith tomorrow please.  For your office."  *Id.*  Stachowiak told Kozak that Intertek was working on staffing and that he would speak with his supervisor, Smith.  *Id.* at 10; CSUMF ¶ 3.

The two then rescheduled their lunch again.  Stachowiak proposed "Monday and Tuesday lunch and then dinner Weds."  Facebook Messages at 13.  Kozak responded by stating "You paying.  So whatever your heart desires."  *Id.*  Kozak requested "an 8 star restaurant," to which Stachowiak responded by promising, "It's 10 stars or nothing for you !!! Hahahaha."  *Id.* at 16.  Stachowiak then asked Kozak to spend the day with him and Kozak responded by requesting the time and location so she could "plan [her] outfit.  Makeup.  Shoes.  Ya know.  All that stuff."  *Id.*

4

at 19.  Stachowiak told Kozak she was "always stunningly radiant !!!  Beautifully elegant !!!!" and that she should "[p]ack light" because it would only be for "one night."  *Id.*  Stachowiak then asked Kozak if she would like room service.  *Id.* at 20.  Kozak said "Negative.  Too cheap."  *Id.*

After finalizing their plans for March 1, 2022, Stachowiak and Kozak met for lunch at Ruby Tuesdays at the Philadelphia Airport.  CSUMF ¶ 22; Facebook Messages at 21.  Stachowiak asked Kozak to stay over and to meet him at his hotel room there.  Facebook Messages at 22.  Stachowiak also messaged Kozak saying "Anticipation… OoooSaaa" and after Kozak told him she would be there in half an hour, Stachowiak said "Nice … Come get your whoopin."  *Id.* at 24.  Kozak claims she was not offended by Stachowiak's inappropriate and lewd comments to her.  CSUMF ¶ 21.  Kozak avers that such informality was "commonplace in the oil industry."  *Id.* (citing Kozak Decl. ¶ 20).

Kozak did not bring her resume to the lunch.  *Id.* ¶ 25.  Kozak states that Stachowiak informed her that he had spoken with Smith about hiring her.  *Id.* ¶ 30.  Smith denies having spoken to Stachowiak about hiring Kozak.  SUMF ¶ 12 (citing Smith Dep. at 257:6–14).  Kozak also states that Stachowiak called Smith during his lunch with Kozak and spoke with him about her.  CSUMF ¶ 39.  Smith denies having spoken with Stachowiak during his lunch.  SUMF ¶ 13 (citing Smith Dep. at 35:18–36:5).  Kozak produces phone records from AT&T demonstrating several calls between Smith's cellphone and Stachowiak's cellphone during lunch.  D.E. 65-3 at 4.  Kozak also states that Stachowiak offered her a job.  CSUMF ¶ 39.

At the end of the lunch, Stachowiak sexually assaulted Kozak in her car in the parking lot of Ruby Tuesdays.  *Id.* ¶ 40.  Stachowiak was convicted for his crime.  *Id.* ¶ 45.

5

**B.    Procedural History**

Kozak filed her Complaint on April 13, 2023.  Kozak's Complaint contains the following counts against:

- Stachowiak for assault (Count I), Compl. ¶¶ 45–53;

- Stachowiak for battery (Count II), *id.* ¶¶ 54–61;

- Stachowiak for false imprisonment (Count III), *id.* ¶¶ 62–70;

- Intertek for negligent hiring (Count IV), *id.* ¶¶ 71–84;

- Intertek for negligent supervision (Count V), *id.* ¶¶ 85–96;

- Intertek for negligent retention (Count VI), *id.* ¶¶ 97–103;

- Both Defendants for negligence (Count VII), *id.* ¶¶ 104–12;

- Both Defendants for intentional infliction of emotional distress ("IIED") (Count VIII), *id.* ¶¶ 113–22; and

- Both Defendants for negligent infliction of emotional distress ("NIED") (Count IX), *id.* ¶¶ 123–32.[5]

Intertek filed an answer to Kozak's Complaint on June 26, 2023.  D.E. 4.  Stachowiak did not appear, and the Clerk of Court accordingly entered default against him.  *See* Dkt.  Kozak later moved for default judgment but because criminal proceedings were ongoing against Stachowiak, the Court administratively terminated the motion.  D.Es. 23 & 43.[6]

---

[5] This Court exercises diversity jurisdiction because Kozak is a citizen of New Jersey, Intertek is a citizen of Louisiana and Texas, and Stachowiak is a citizen of Maryland.  Compl. ¶¶ 1–4.  The events at issue took place while Stachowiak worked out Intertek's New Jersey office.  *Id.* ¶ 4.  The parties do not contest either personal or subject matter jurisdiction.

[6] Given the apparent conclusion of Stachowiak's criminal proceeding, Kozak Decl. ¶ 63, Kozak may file a renewed motion for default judgment within thirty days of the date of this Opinion.

Intertek and Kozak participated in mediation in August 2024, D.E. 36, but it was unsuccessful, D.E. 40. Following the completion of discovery on July 31, 2025, D.E. 59, the parties then briefed Intertek's Motion, D.E. 64.

## II.    LEGAL STANDARD

Courts should grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "The substantive law governing the dispute will determine which facts are material, and only disputes over those facts 'that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" *DeHart v. Horn*, 390 F.3d 262, 267 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 248).

The movant bears the initial burden of showing the basis for its motion and demonstrating that no dispute of material fact exists. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant must support its position by citing to the record, "including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . . ." Fed. R. Civ. P. 56(c)(1)(A). Once the movant identifies evidence in support of its motion for summary judgment, the nonmovant must then counter with evidence that demonstrates there is a genuine issue of fact. *Big Apple BMW, Inc. v BMW of N. Am., Inc.*, 974 F.2d 1358, 1362 (3d Cir. 1992). The Court must then view the evidence in the light most favorable to the non-moving party and

7

determine whether a genuine dispute exists. *Dee v. Borough of Dunmore*, 549 F.3d 225, 229 (3d Cir. 2008).

## III.   DISCUSSION

Kozak brings claims against Intertek for direct liability torts and vicarious liability torts. Direct liability torts, such as negligent hiring, address "the risk created by exposing members of the public to a potentially dangerous individual, while the doctrine of *respondeat superior* is based on the theory that the employee is the agent or is acting for the employer."[7] *Di Cosala v. Kay*, 91 N.J. 159, 172 (1982). Because Kozak fails to raise a genuine issue of material fact with respect to either type of tort, the Court will **GRANT** Intertek's Motion and **DISMISS** Intertek from this action.

### A.   Intertek is Entitled to Summary Judgment on Counts IV, V, and VI

#### 1.   *Legal standard for direct liability torts*

Intertek moves for summary judgment on Kozak's claims against it for negligent hiring, negligent supervision, and negligent retention. In New Jersey, the torts of negligent hiring, negligent retention, and negligent supervision "are based on the direct fault of an employer." *G.A.-H. v. K.G.G.*, 238 N.J. 401, 415 (2019). They are not vicarious liability torts. *Id.*

The three torts are similar. Negligent hiring and negligent retention both require first proving that an employer "knew or had reason to know of the particular unfitness, incompetence, or dangerous attributes of the employee." *Id.* at 416. Both torts then require proving that because of the employer's negligence in hiring or retaining the employee, the employee's "incompetence, unfitness or dangerous characteristics proximately caused the injury." *Di Cosala*, 91 N.J. at 173.

---

[7] "The term 'vicarious liability,' when used to defined an employer's liability for an employee's acts, is synonymous with respondeat superior." *Davis v. Deveruex Found.*, 209 N.J. 269, 287 (2012) (citing 2 Dan B. Dobbs et al., *The Law of Torts* § 425, at 779–80 (2d. ed. 2011)).

8

Negligent supervision is similar as well, but couched in slightly different terms.  To prove negligent supervision, a "plaintiff must prove that (1) an employer knew or had reason to know that the failure to supervise or train an employee in a certain way would create a risk of harm and (2) that risk of harm materializes and causes the plaintiff's damages."  *K.G.G.*, 238 N.J. at 416 (citing *Di Cosala*, 91 N.J. at 173).

> 2.    *Kozak does not raise a genuine dispute of material fact regarding what Intertek knew or should have known*

The direct liability torts Kozak brings require determining whether Intertek "should have anticipated, *under the same or similar circumstances*, that injury to [Kozak] *or to those in a like situation would probably result*."  *See Di Cosala*, 91 N.J. at 174–75 (first emphasis added, second emphasis in original) (quoting *Hill v. Yaskin*, 75 N.J. 139, 144 (1977)).  To support her claims, Kozak's declaration attests that at an industry convention, Smith terminated Stachowiak on the spot after Stachowiak was accused of sexual harassment and assault.  CSUMF ¶¶ 42–44 (citing Kozak Decl. ¶¶ 56–58).  Based on these purported events, Kozak contends that Smith—and by extension Intertek—knew of Stachowiak's dangerous propensity for sexual assault and abuse.  *Id.* ¶ 41 (citing Kozak Decl. ¶¶ 55, 63).  Kozak's declaration additionally relies on Stachowiak's own statements from a criminal proceeding in which he stated that friends and colleagues were familiar with his tendency to engage in "inappropriate behavior" to support her accusation that Intertek knew of the risk that Stachowiak would commit sexual assault.  *Id.* ¶ 46 (citing Kozak Decl. ¶ 63).  For the reasons below, Kozak's declaration and Stachowiak's referenced statements are insufficient to put at issue what Intertek knew or should have known regarding the likelihood that Stachowiak would sexually assault someone.  Accordingly, the Court will **GRANT** Intertek summary judgment on Counts IV, V, and VI and **DISMISS** those counts.

> i.    <u>Kozak's reliance on an accusation of sexual misconduct is not enough here to show knowledge of propensity</u>

9

Kozak's declaration is insufficient because while it does mention sexual harassment and assault, it relies on a single unspecific and unsubstantiated accusation. Kozak Decl. ¶ 57. Kozak provides no evidence regarding who made the accusation, in what year (or decade) the accusation was levied, how she learned of the accusation, or what the circumstances were. *See id.* She merely attests that Stachowiak was accused. *Id.* ¶ 57; *see* CSUMF ¶ 43.

Without knowing anything about how, when, or what Smith learned, the Court cannot determine whether a reasonably prudent and careful person in his position should have foreseen a risk that Stachowiak would sexually assault any individual in the future. All Kozak provides in her declaration is that at "Massachusetts Appreciation Day" (at some point between 2007 and 2022), Stachowiak was accused of sexually harassing and assaulting a female employee and that Smith fired Stachowiak for his conduct. CSUMF ¶¶ 42–44 (citing Kozak Decl. ¶¶ 56–58). Yet, despite completing discovery, Kozak identifies no evidence corroborating either that Stachowiak was terminated from SGS or that he was terminated because he was accused of sexual harassment and assault.[8]

While the Court recognizes that accusations can impart constructive knowledge of a person's propensities for certain behavior, Kozak here points only to one accusation and provides no details that would permit a reasonable jury to find that this accusation placed Smith on notice regarding Stachowiak's propensity for sexual assault. *See C.Q. v. Estate of Rockefeller*, No. 20-2205, 2021 WL 4942802, at *9 (S.D.N.Y. Oct. 21, 2021) (dismissing claims at motion to dismiss stage because past accusations of sexual assault were not enough to indicate a propensity to commit sexual assault for purposes of negligent hiring); *see also In re Tribune Media Co.*, 902 F.3d 384,

---

[8] Kozak does not dispute that Intertek's employment and criminal background check revealed no criminal history. SUMF Response ¶ 5.

10

400 (3d Cir. 2018) (finding that disputed accusations of racial bias from over a decade earlier failed to show actual or constructive knowledge of defendant's racial animus); *c.f. Doe 70 v. Diocese of Metuchen*, 477 N.J. Super. 270, 282–83 (App. Div. 2023) (finding evidence of defendant's knowledge of priest's improper sexual propensity because defendant had been in possession of a document titled "summary of accusations" detailing allegations of sexual abuse of at least three children).

Kozak's reliance on a single unsubstantiated and unspecific accusation of sexual assault from some indeterminate period therefore renders her declaration insufficient to create a dispute of fact regarding Smith's and Intertek's knowledge of Stachowiak's propensity for sexual assault.

ii.    <u>Kozak's evidence is too vague to raise a dispute regarding Smith's or Intertek's knowledge</u>

In addition to relying on an unspecific accusation, the rest of Kozak's declaration regarding Stachowiak's past misconduct is too vague to reasonably permit the conclusion that either Smith or anyone else at Intertek should have anticipated that Stachowiak might sexually assault someone.

For example, Kozak states Stachowiak engaged in "highly inappropriate and unlawful conduct," but she provides no details regarding what that misconduct was. Kozak Decl. ¶¶ 57–58. Without more specificity and without explaining the basis for her attestations, the Court cannot determine whether the circumstances of the prior misconduct were of similar enough circumstances to Kozak's such that Smith could have reasonably anticipated their occurrence.

Kozak's declaration also relies on Stachowiak's own statements that his friends and colleagues knew of his tendency to engage in "inappropriate behavior," but such statements—even if admissible—similarly fail to evince that anyone at Intertek knew or should have known of the risk that Stachowiak would *sexually assault* someone. For one, Stachowiak had been working at Intertek for only a few weeks before he sexually assaulted Kozak. His statements do not

11

demonstrate that anyone at *Intertek specifically*, including Smith, knew of Stachowiak's propensity for "inappropriate behavior." Further, even if Stachowiak's colleagues at Intertek knew of his propensity to engage in "inappropriate behavior," such knowledge would still fall short of permitting anyone to anticipate that Stachowiak would commit sexual assault *in particular*. *See Gargano v. Wyndham Skyline Tower Resorts*, 907 F. Supp. 2d 628, 633 (D.N.J. Nov. 2, 2012) (rejecting argument that an employee's prior violent history could have put employer on notice that he would specifically commit sexual assault).

To survive summary judgment, Kozak must identify evidence permitting a reasonable jury to conclude that Intertek knew or should have known of the particular risk that Stachowiak would commit sexual assault. *K.G.G.*, 238 N.J. at 415. Attestations and statements about general "inappropriate behavior" do not cut it.

iii.    Kozak additionally fails to attest to personal knowledge and her own filings contradict her account

"An affidavit or declaration used to support or oppose a motion must be made based on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(3). An affidavit not based on personal knowledge cannot create an issue of material fact. *See id.*; *Lupyan v. Corinthian Colls., Inc.*, 761 F.3d 314, 320 (3d Cir. 2014). Nor can an affidavit that fails to set forth *specific* facts. *See Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 161 (3d Cir. 2009); *see also supra* Section III.A.1.ii (discussing the lack of specificity in Kozak's declaration).

Kozak's only evidence to support Smith's knowledge of Stachowiak's propensity to engage in sexual misconduct is her declaration, but her declaration does not make clear whether her attestations are based on personal knowledge. *See* Kozak Decl. ¶¶ 57–58. It merely attests that she attended an industry event and that at some point during the industry event "Stachowiak

12

was accused of sexually harassing and assaulting a female employee of another inspection company" and that "Stachowiak was terminated by Smith on the spot for this highly inappropriate and unlawful conduct." *Id.* There is no more information. Missing from Kozak's declaration is any indication as to whether she herself witnessed these events or whether she learned of them through other (potentially inadmissible) means.

In addition, Kozak's own testimony and filings contradict her declaration that Stachowiak engaged in sexual misconduct at an industry event while she, Smith, and Stachowiak were working for SGS. During her deposition, Intertek's counsel asked Kozak whether Stachowiak had ever done anything inappropriate to her and whether Stachowiak had ever done anything inappropriate to anyone else. Kozak Dep. at 11:21–12:5. Kozak said "no." *Id.* In her declaration and Counterstatement, Kozak backtracks that response and explains that what she meant by "no" was only that during her time working in "prior jobs at SGS, Intertek, and Inspectorate," she had no knowledge of Stachowiak having behaved inappropriately with anyone. Kozak Decl. ¶¶ 59–61; CSUMF ¶¶ 47–48. This plainly contradicts her declaration that while Kozak, Smith, and Stachowiak worked for SGS and attended an industry event, Smith terminated Stachowiak "on the spot" following an accusation that Stachowiak sexually assaulted another female employee. Kozak Decl. ¶¶ 56–58.

Kozak thus appears to confirm that she lacks knowledge regarding any purported misconduct, sexual or otherwise, that Stachowiak had previously engaged in. Her declaration, which, in unspecific terms, contends otherwise, therefore cannot be relied upon to establish that Smith/Intertek should have anticipated that Stachowiak might commit sexual assault.

iv.    The documentary record contradicts Kozak's declaration

Finally, despite completing discovery, Kozak points to nothing in the record that could have placed Intertek on notice of Stachowiak's dangerous attributes.  If anything, the record indicates the opposite.[9]  The parties do not dispute that Intertek performed a formal employment and criminal background check and that no criminal history was found, even though Stachowiak's prior sexual misconduct at SGS was the purported grounds for his termination there.[10]  CSUMF ¶ 5.  In the absence of such a record, Kozak has not shown that Intertek received notice of Stachowiak's conduct.  *See D.T. v. Hunterdon Med. Ctr.*, No. 961-07, 2012 WL 4448774, at *11 (N.J. Super. Ct., App. Div. Sept. 27, 2012) (dismissing negligent hiring claims at summary judgment because tortious actor's criminal background check came back negative and nothing in his employment record revealed that he would have harassed or sexually assaulted someone).

Accordingly, because Kozak identifies no competent evidence demonstrating that anyone at Intertek knew or had reason to know of the sexual assault risk that Stachowiak posed, and because Intertek has identified competent evidence indicating that (1) Smith had no knowledge of the sexual assault accusation Kozak mentions in her declaration and (2) Intertek had no reason to know of any prior sexual misconduct given that Stachowiak's employment and criminal history

---

[9] Smith provided testimony that he did not terminate Stachowiak while at SGS, does not know when Stachowiak stopped working for SGS, and has no knowledge of the sexual misconduct allegations Kozak attests Smith terminated Stachowiak over.  SUMF ¶ 26 (citing Smith Dep. at 49:11–50:15).

[10] The Court recognizes there is a gap between stating that Stachowiak had no "criminal history" and stating that his employment and criminal background checks returned no record of misconduct.  Nevertheless, Kozak—despite providing additional context to dispute nearly every fact in Intertek's SUMF, *see, e.g.*, SUMF Response ¶ 12 (Intertek stating that "Smith testified that Mr. Stachowiak never spoke with Smith about hiring Plaintiff" and Kozak disputing this fact—in full—because Stachowiak told Kozak privately he would speak with Smith)—provides no additional context to Intertek's statement that Stachowiak's background check revealed no criminal history.

background check revealed no criminal history, Intertek is entitled to summary judgment on Kozak's direct liability claims. The Court will therefore **GRANT** Intertek summary judgment on Counts IV, V, and VI and will **DISMISS** those counts from this action.

**B.      Vicarious Liability Torts (Counts VII, VIII, and IX)**

Intertek also moves for summary judgment on Kozak's claims against it for negligence, IIED, and NIED. Because Kozak cannot show that Stachowiak's sexual assault was within the scope of his employment, Intertek is entitled to summary judgment on Kozak's vicarious liability claims. The Court will therefore **GRANT** Intertek summary judgment on Counts VII, VIII, and IX and **DISMISS** those counts against it.

*1.      Intertek may be held vicariously liable for Stachowiak's tortious conduct only if he acted within the scope of his employment*

An employer may traditionally only be held vicariously liable for an employee's tortious conduct "if at the time of [the tort's] occurrence, the employee was acting within the scope of his or her employment." *Carter v. Reynolds*, 175 N.J. 402, 408–09 (2003) (citing *Lehmann v. Toys 'R' Us, Inc.*, 132 N.J. 587, 619 (1993)); *Di Cosala*, 91 N.J. at 168–69. An employee acts within the scope of his employment when his or her actions (1) are of the kind he or she was employed to perform; (2) take place within authorized times and spaces; and (3) are motivated, "at least in part, by a purpose to serve the [employer]." *Di Cosala*, 91 N.J. at 169 (quoting Restatement (Second) of Agency § 228 (1957)).

Limited exceptions to this traditional rule exist. *E.S. for G.S. v. Brunswick Inv. Ltd. P'ship*, 469 N.J. Super. 279, 293 (App. Div. 2021); *see Hornor v. Upper Freehold Reg'l Bd. of Educ.*, No. 08-9973, 2026 WL 681390, at *11–12 (N.J. Mar. 11, 2026) (quoting *Lehman*, 132 N.J. at 619–20). But New Jersey courts have thus far limited those exceptions to cases in which plaintiffs bring causes of action under remedial statutes such as the New Jersey Law Against Discrimination,

N.J. Stat. Ann. §§ 10:5-1–50, New Jersey's Conscientious Employee Protection Act, N.J. Stat. Ann. §§ 34:19-1–14, and the Child Sexual Abuse Act, N.J. Stat. An.. § 2A:61B-1. *E.S. for G.S.*, 469 N.J. at 293–95. Because Kozak does not bring a cause of action under a remedial statute, her vicarious liability torts must be based on an action within the scope of Stachowiak's employment with Intertek.

New Jersey courts have instead made clear that outside the context of remedial legislation, employers will only be held responsible for the tortious conduct of its employees that occur outside the scope of employment "where it knew or had reason to know of the particular unfitness, incompetence, or dangerous attributes of the employee and could have reasonably foreseen that such qualities created a risk of harm to other persons." *Devereux*, 209 N.J. at 292 (quoting *Di Cosala*, 91 N.J. at 173). As a result, an employer's liability for employees who act outside the scope of their employment is instead accounted for by the very direct liability tort claims Kozak brings and which this Court has already discussed. *See supra* Section III.A; *E.S. for G.S.*, 469 N.J. at 295–96 (noting that the exceptions have been superseded by direct liability torts when "the harm was caused the [employer's] negligence in selecting, training, retaining, supervising, or otherwise controlling the agent.").

2.      *Stachowiak's sexual assault falls outside the scope of his employment*

"Only rarely will intentional torts fall within the scope of employment." *Hornor*, 2026 WL 681390, at *13 (quoting *Devereux*, 209 N.J. at 303). When the intentional tort amounts to a serious crime, it is even less likely to fall within the scope of employment. *Devereux*, 209 N.J. at 303. Only when the intentional crime is taken with the intent to further the employer's business will the employer be "chargeable even though the employee's conduct be 'imbecilic.'" *Id.* at 305–06 (quoting *Gibson v. Kennedy*, 23 N.J. 150, 158 (1957)).

16

It is undisputed that Stachowiak sexually assaulted Kozak, an intentional act and a serious crime for which he was convicted.  SUMF Response ¶ 17; CSUMF ¶¶ 45–46.  Yet, Kozak makes no colorable argument that Stachowiak sexually assaulted her with the intent to further Intertek's business.  Nor could she.  New Jersey courts have rejected stronger vicarious liability claims than Kozak's.  *See K.J. v. J.P.D.*, No. 20-14177, 2022 WL 4596717, at *11 (D.N.J. Sept. 30, 2022) (collecting cases).

For example, the New Jersey Supreme Court agreed that it was proper for a New Jersey Superior Court to reject the argument that a social worker acted within the scope of his employment when engaging in a sexual relationship with his patient as part of a psychotherapy session. *Devereux*, 209 N.J. at 303 (quoting *Cosgrove v. Lawrence*, 214 N.J. Super. 670, 679 (L. Div. 1986), *aff'd*, 215 N.J. Super. 561, 522 (App. Div. 1987)); *see, e.g.*, *Rose ex rel. Roe v. Rutgers, State Univ. of N.J.*, No. 13-1762, 2013 WL 3446456, at *5 (D.N.J. July 9, 2013) (finding philosophy professor's sexual relationship with a student outside the scope of her employment with the university).  Because sexual assault is different in nature from what employees "in a lawful occupation are expected to do," "far beyond" what lawful employers authorize, and "too little actuated by a purpose to serve the [employer]," the *Cosgrove* court reasoned that the sexual relationship could not have been within the scope of the social worker's employment, including his ability to administer psychotherapy sessions. *Devereux*, 209 N.J. 305–06.  Even if Stachowiak was authorized to interview Kozak at a bar—a point both parties debate—no party argues that the sexual assault was a component part of Kozak's purported interview.  Indeed, Kozak herself states that Stachowiak had already offered her the job well before the pair finished their drinks at the hotel and well before Stachowiak sexually assaulted her.  CSUMF ¶ 39.

17

Moreover, Stachowiak's sexual assault directly contravened Intertek's Code of Ethics, which Stachowiak agreed to, and which explicitly prohibits sexual misconduct.  Intertek's Code of Ethics at 4; *see Hornor*, 2026 WL 681390, at \*20 (finding that a teacher's sexual abuse of a student could not be within the teacher's scope of employment because it was "antithetical to a teacher's educational mission").

Kozak therefore fails to identify what about Stachowiak's sexual assault was (1) within the scope of what Intertek expected from Stachowiak; (2) authorized by Intertek; or (3) motivated by a purpose to serve Intertek.  *See Di Cosala*, 91 N.J. at 169 (quoting Restatement (Second) of Agency § 228 (1957)).  Having therefore identified no reason to depart from the general principle that intentional torts—and in particular, serious crimes—fall outside the scope of lawful employment, no reasonable jury could find Intertek vicariously liable for Stachowiak's sexual assault.  The Court will therefore **GRANT** Intertek summary judgment on Counts VII, VIII, and IX and **DISMISS** those counts against it.

## IV.    CONCLUSION

For the reasons stated above, the Court will **GRANT** Intertek's Motion and **DISMISS** Intertek from this action.  An appropriate Order accompanies this Opinion.

Dated: April 29, 2026

_____
Evelyn Padin, U.S.D.J.

18